**WARNING:**     THIS IS A SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

JUDITH A. PHILIPS
Acting United States Attorney
District of Hawaii



**SEALED**
**BY ORDER OF THE COURT**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
**Mar 24, 2021**
Michelle Rynne, Clerk of Court

MICAH SMITH
MORGAN EARLY #10104
Assistant U.S. Attorneys
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-Mail:  Micah.Smith@usdoj.gov
         Morgan.Early@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | MAG. NO. 21-0363-RT |
|---|---|---|
| Plaintiff, | ) | CRIMINAL COMPLAINT; |
| vs. | ) ) ) | AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT |
| VICTOR AGUILAR, | ) ) | |
| Defendant. | ) ) | |

**CRIMINAL COMPLAINT**

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief.

Count 1
Sexual Exploitation of Child
(18 U.S.C. § 2251(a))

On or about June 16, 2020, within the District of Hawaii, VICTOR AGUILAR, the defendant, did use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, namely, the video file 20200616_101015.mp4, which was produced using materials that had been mailed, shipped, and transported in interstate commerce.

All in violation of Title 18, United States Code, Section 2251(a).

Count 2
Sexual Exploitation of Child
(18 U.S.C. § 2251(a))

On or about May 6, 2020, within the District of Hawaii, VICTOR AGUILAR, the defendant, did use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, namely, the video file 20200506_182537.mp4, which was produced using materials that had been mailed, shipped, and transported in

interstate commerce.

All in violation of Title 18, United States Code, Section 2251(a).

I further state that I am a Special Agent with Homeland Security Investigations and that this Complaint is based upon the facts set forth in the attached affidavit, which is incorporated herein by reference.

DATED: March 24, 2021, Honolulu, Hawaii.

_____
LAURA DAI
Special Agent, HSI

Sworn to under oath before me telephonically, and attestation acknowledged pursuant to Federal Rule of Criminal Procedure 4.1(b)(2), on this __24th__ day of March 2021, in Honolulu, Hawaii.



_____
Rom A. Trader
United States Magistrate Judge

3

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, LAURA DAI, being duly sworn, affirm and state:

## INTRODUCTION

1. This affidavit is submitted in support of a criminal complaint charging VICTOR AGUILAR, the defendant (hereinafter "AGUILAR"), with violating Title 18, United States Code, Section 2251(a) (sexual exploitation of a child).

2. I am a Special Agent with Homeland Security Investigations (HSI) and am presently assigned to the Honolulu Field Office, Cyber Group. I have been employed as a Special Agent with HSI since 1993. I have investigated criminal cases including internet crimes against children, drug smuggling, human smuggling, human trafficking, fraud, illegal exports, financial fraud, and other violations. As part of these investigations, I have participated in the execution of numerous federal and state search warrants. I have received training in criminal investigations involving child pornography, including training provided by the Internet Crimes Against Children (ICAC) task force for the investigation of individuals downloading and sharing child pornography. I have participated in training courses for the investigation and enforcement of child pornography laws in which computers are used as the means for receiving, transmitting, and storing child pornography. I have participated in investigations involving child

pornography, the creation of child pornography, and online solicitation and enticement of minors.

3. The facts and information contained in this affidavit are based on my personal involvement in this investigation, personal knowledge and observations, my review of records and documents obtained during this investigation, and information received from other individuals, including witnesses and other law enforcement officers as well as my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint, it does not set forth each and every fact known by me or to law enforcement. Furthermore, summaries of and statements from conversations do not include references to all topics covered in the communications.

## BACKGROUND

### *The Defendant*

4. From publicly available information, I have learned, among other things, that AGUILAR is a 65-year-old resident of the town of Kalaheo on the island of Kauai. AGUILAR is a Major with the United States Army and, beginning in or around 1995, acted as an instructor for the Junior Reserve Officers' Training Corps (JROTC) at Waimea High School on Kauai. In an interview in 2017, AGUILAR represented that over the years, the JROTC program at Waimea

High School has included anywhere from 49 to 205 cadets, at times encompassing as much as 20 percent of the student population.[1]

5.    More recently, however, AGUILAR resigned from his position as the JROTC Senior Army Instructor at Waimea High School.  On or about March 11, 2021, AGUILAR was arrested on a state indictment, brought by the County of Kauai Office of the Prosecuting Attorney, charging him with having sexually assaulted a former student.

### *The Minor Victim*

6.    The "Minor Victim" is one of AGUILAR's former JROTC students at Waimea High School.  As described below, there is probable cause to conclude that on at least two occasions in 2020, at a time when the Minor Victim was under the age of eighteen, AGUILAR sexually exploited the Minor Victim by using, persuading, inducing, enticing, and coercing her to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, in violation of Title 18, United States Code, Section 2251(a).  The evidence, described below, indicates that AGUILAR's sexual exploitation of the Minor Victim occurred in his home, in his vehicle, and even at Waimea High School.

---

[1]    David McCracken, *Talk Story: Victor Aguilar*, The Garden Island, Apr. 9, 2017.

## **PROBABLE CAUSE**

### *The DOE's Investigation into Workplace-Related Misconduct*

7. AGUILAR's misconduct was first brought to the attention of authorities, not by the Minor Victim, but by another of AGUILAR's former students. On January 29, 2021, a different former Waimea High School student (hereinafter the "Former Student") made contact with the State of Hawaii Department of Education Equity Specialist for the Kauai District (hereinafter the "DOE Equity Specialist"). From publicly available information, I know that Equity Specialists are assigned to the Civil Rights Compliance Branch of the Hawaii DOE; they investigate, among other things, complaints relating to sexual harassment and discrimination.

8. The Former Student reached out to the DOE Equity Specialist to share some concerns that she had regarding AGUILAR, who had been the Former Student's JROTC instructor while she was a student at Waimea High School. This incident involved AGUILAR touching the Former Student's legs in a way that made her uncomfortable.

9. The Former Student also reported to the DOE Equity Specialist that, on one occasion, when the Former Student was preparing a graduation slide show, the Former Student was able to access pictures on AGUILAR's laptop computer

7

(hereinafter "AGUILAR's Laptop"). While working on AGUILAR's Laptop, the Former Student saw a folder that had several subfolders inside of it. Each subfolder had the name of a different student. Inside each subfolder were pictures of the individual student in whose name the subfolder was labeled, frequently wearing bikinis or beach wear. The Former Student located one such subfolder containing pictures of herself in a swimsuit, and she was uncomfortable with it. The Former Student noted that the pictures appeared to be from social media and that the pictures of her appeared to be cropped.

10. The Former Student further disclosed to the DOE Equity Specialist that she knew of other former and current students who had shared with her that AGUILAR had touched their legs, thighs, or buttocks.

11. On February 2, 2021, AGUILAR was notified that the DOE Equity Specialist was conducting an investigation. Additionally, the Hawaii DOE JROTC Command was notified of the pending investigation because they share jurisdiction with the Hawaii DOE for JROTC instructors. JROTC Command gave the DOE Equity Specialist permission to confiscate and examine any U.S. Military computers issued to AGUILAR. That same day, the DOE Equity Specialist went to the Waimea High School JROTC classroom, along with the principal, to retrieve the computer equipment issued to AGUILAR by the Hawaii DOE and U.S.

Military.  AGUILAR was present and handed over the laptop he used in the classroom (namely, AGUILAR's Laptop) and a portable hard drive on which he kept his work (hereinafter "AGUILAR's Hard Drive").

12. The DOE Equity Specialist returned to his office and began to examine AGUILAR's Laptop and AGUILAR's Hard Drive to see if there were any files or file folders similar to what the Former Student had described.  The DOE Equity Specialist's purpose was to substantiate or disprove the allegation of workplace-related misconduct that the Former Student had reported.

13. On AGUILAR's Laptop, the DOE Equity Specialist found a file folder named "alumni" with subfolders containing the names of various females.  Each of these subfolders contained pictures of female students, most of whom were wearing bikinis or beachwear.  A large variety of pictures and videos, mostly of females either in swimwear, nude, or partially nude, were also found.  Several photographs looked as if they had been downloaded from the internet, and some displayed girls who looked under the age of 18.  The DOE Equity Specialist did not at that time determine which, if any, of these girls were former or current students of AGUILAR.

14. Having substantiated the allegations of workplace-related misconduct, the DOE Equity Specialist contacted the Kauai Police Department (KPD) and the

Kauai District School Leadership, as well as JROTC Command. AGUILAR was placed on leave and later resigned from the Waimea High School's faculty.

### *The KPD's Criminal Investigation*

15. Following the referral from the DOE Equity Specialist, KPD initiated an investigation into AGUILAR for possible violations of state criminal law. On or about February 3, 2020, KPD learned that in the wake of his resignation, AGUILAR had exchanged text messages with a former JROTC student, the Minor Victim. In these text messages, among other things, AGUILAR wrote to the Minor Victim, in substance and in part, that he did not have a job because of some "touching" that had occurred between him and former students.

16. A recorded forensic interview of the Minor Victim was conducted. During the interview, the Minor Victim disclosed that AGUILAR had engaged in sexually explicit conduct with her, and that he had used his cellphone to make videos of certain sexually explicit acts. The Minor Victim reported that AGUILAR engaged in these acts toward the Minor Victim at the high school, in his vehicle, and in his home.

17. KPD conducted a search of the Minor Victim's cellphone and discovered, among other things, the text messages exchanged between the Minor Victim and AGUILAR, in which he told her that he was under investigation.

18.   KPD also obtained a state search warrant to search the contents of AGUILAR's Laptop and AGUILAR's Hard Drive for evidence of violations of state law.   While executing the state search warrants, KPD found, on AGUILAR's Hard Drive, two video clips, described in more detail below, which are consistent with the Minor Victim's recorded interview statements.   KPD also found, on AGUILAR's Laptop, subfolders of approximately 61 students and/or former students of Waimea High School's JROTC, which appear to date from in or about 2009 until recently.   These photographs appear to consist mainly of students and former students in bikinis, which appear to be have been pulled from social media websites.   From my training and experience, and familiarity with this investigation, I believe that these photographs on AGUILAR's Laptop indicate that AGUILAR was sexually attracted to several of his students and/or former students. This evidence generally tends to confirm that AGUILAR is the person who created the video clips of the Minor Victim, and that he used the Minor Victim to create these video clips for purposes of his own sexual gratification.

*The Federal Investigation*

19.   After KPD identified the video clips described above, HSI sought a federal search warrant to search AGUILAR's Laptop and AGUILAR's Hard Drive

for evidence of violations of, among other things, Title 18, United States Code, Section 2251.

20.  From my review of AGUILAR's Hard Drive and AGUILAR's Laptop, and from related investigative steps I have taken, I have learned, in substance and in part, the following, all of which forms the basis of Count 1:

a.  Recovered from both AGUILAR's Hard Drive and AGUILAR's Laptop was a file named "20200616_101015.mp4" (hereinafter "Video Clip 1").  Video Clip 1 is approximately 2 minutes and 53 seconds in length, depicting a female.

b.  For most of Video Clip 1, the camera is zoomed in on a female's genitals, as a man's hand touches her labia and clitoris.  Detective Chad Cataluna of KPD, who is also a Task Force Officer with HSI, has identified the male voice as belonging to AGUILAR.  Detective Cataluna spoke with AGUILAR on or about February 18, 2021, and, as a consequence, is familiar with his voice.

c.  The female in Video Clip 1 also makes audible statements. Based on my review of the Minor Victim's interview with law enforcement, in which her voice can be heard, I believe the female voice in the video is the Minor Victim.

  d. At one brief point in Video Clip 1, the camera momentarily shows a blurry female face. The appearance of this female face, and the skin tone of the female, is consistent with the face and skin tone of the Minor Victim. I am familiar with the appearance of the Minor Victim because, among other things, I have reviewed a recording of her interview with law enforcement.

  e. The audio statements in Video Clip 1 have been transcribed as follows, with the female voice attributed to the Minor Victim and the male voice attributed to AGUILAR. (The visual for the majority of this conversation is a close-up of the female's genitals.) During the course of the conversation, AGUILAR can be heard directing the Minor Victim, with comments such as "You got to quit moving" and "You're not holding it steady," as he produces the video of her genitals. At one point, the Minor Victim asks, "Do I have to be in this position?" AGUILAR also states, "Hopefully, my video is getting us something. Can you feel it?"

 21. From my review of AGUILAR's Hard Drive and AGUILAR's Laptop, and from related investigative steps, I have learned, in substance and in part, the following, all of which forms the basis of Count 2:

  a. Recovered from both AGUILAR's Hard Drive and AGUILAR's Laptop was a file named "20200506_182537.mp4" (hereinafter

13

"Video Clip 2"). This file is a video clip with an approximate length of 16 seconds. In Video Clip 2, a minor female—who I recognize as the Minor Victim—is standing naked with her breasts and pubic area facing the camera.

      b.    As the Minor Victim stands in front of the camera, a man's voice can be heard directing her to do specific things. At one point, the man's voice says, in substance and in part, "alright I've gotta stop the flash. I got a smile out. Okay, let's see your coyness, there you go. Alright I'll let you go. Hey . . . ." Detective Cataluna reviewed and listened to the male voice in Video Clip 2 and identified the male voice as belonging to AGUILAR. The Minor Victim stands naked, generally complying with his directions, until the clip ends.

    22.    I have spoken with KPD Forensic Specialist Christian Vlautin regarding the metadata of Video Clip 1 and Video Clip 2, from which I have learned, in substance and in part, the following:

      a.    Forensic Specialist Vlautin confirmed that Video Clip 1 and Video Clip 2 were recovered from both AGUILAR's Hard Drive and AGUILAR's Laptop. Although the metadata for these video clips do not indicate what device was used to initially create them, still images (that is, photographs) taken during the same timeframe and in the apparent same location (a bedroom) are listed as having been taken using a Samsung Model SM-G970U (hereinafter "Samsung

14

Galaxy S10"). From this information, I believe there is probable cause to conclude that AGUILAR used a Samsung Galaxy S10 to create Video Clip 1 and Video Clip 2.

        b.     The file names of Video Clip 1, Video Clip 2, and surrounding still images indicate that they were assigned file names using the format of "YYYYMMDD_HHMMSS," with "YYYY" representing the year, "MM" representing the month, "DD" representing the day, "HH" representing the hour, "MM" representing the minute, and "SS" representing the second. Based on these file names, I believe there is probable cause to conclude that Video Clip 1 (20200616.101015.mp4) was created on June 16, 2020, at 10:10 a.m., and that Video Clip 2 (20200506_182537.mp4) was created on May 6, 2020, at 6:25 p.m.

        c.     The metadata show that Video Clip 1 was created (or copied onto) on AGUILAR's Laptop on July 11, 2020, and that Video Clip 2 was created (or copied onto) AGUILAR's Laptop on June 4, 2020. The metadata further show that these video clips were created (or copied onto) AGUILAR's Hard Drive on January 10 and 11, 2021.

     23.     Based on the evidence described above, I believe that AGUILAR used a Samsung Galaxy S10 to create Video Clip 1 and Video Clip 2, and that at different times, he uploaded the video clips onto AGUILAR's Hard Drive and

AGUILAR's Laptop.  Each of these actions constitutes the use of materials that traveled across state lines prior to their use in the production of child pornography, because from my training and experience, I know that the make and model of the cellphone, hard drive, and laptop have not been manufactured in Hawaii.

24. AGUILAR's cellphone was seized on February 18, 2021.  That cellphone is a Samsung Galaxy S10.  The cellphone was subscribed to AGUILAR in his own name and listing his home address.  Although KPD obtained a state search warrant to search this cellphone, law enforcement has not yet unlocked it.  Nonetheless, subscriber records show that the Samsung Galaxy S10 was subscribed to AGUILAR between December 23, 2004, and February 25, 2021, which encompasses the months of May and June 2020, the time period when AGUILAR created Video Clip 1 and Video Clip 2.

25. Based on my training and experience, and familiarity with this investigation, I believe that the depictions in the two video clips described above qualify as "sexually explicit conduct" within the meaning of Title 18, United States Code, Section 2256(2)(A)(v).  In particular, I believe that the video clips include "lascivious exhibition of the anus, genitals, or pubic area" of the Minor Victim.  18 U.S.C. § 2256(2)(A)(v).  Among other things, in both of the video clips, "the child is depicted in an unnatural pose"; "the child is . . . nude"; "the visual

depiction suggests sexual coyness or a willingness to engage in sexual activity"; and "the visual depiction is intended to designed to elicit a sexual response in the viewer." *United States v. Hill*, 459 F.3d 966, 971 (9th Cir. 2006) (quoting *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987)).

26.     The two video clips described above are not the only depictions of the Minor Victim that were recovered from AGUILAR's Hard Drive and AGUILAR's Laptop. Law enforcement has identified approximately 1,000 artifacts—both videos and photographs—in which the Minor Victim is believed to appear. Although not all of these videos and photographs qualify as child pornography within the meaning of federal law, they further confirm that AGUILAR was the person who created Video Clip 1 and Video Clip 2, on which Counts 1 and 2 are based. For example, one file named "20200503_114358.mp4"—which I believe was created on May 3, 2020, at approximately 11:43 a.m.—is approximately 38 seconds in length and shows both AGUILAR and the Minor Victim in a car sitting in the front passenger seat. Both AGUILAR and the Minor Victim are clearly visible. The Minor Victim's breasts are exposed to the camera and AGUILAR touches her breasts while making audible statements to her and to the camera.

Eventually, AGUILAR puts his mouth on the Minor Victim's nipple.  AGUILAR can be heard instructing the Minor Victim to smile for the camera.

## CONCLUSION

27.     Based on the foregoing, I believe that probable cause exists to issue a criminal complaint and arrest warrant charging AGUILAR with violating Title 18, United States Code, Section 2251(a).

DATED:   March 24, 2021, at Honolulu, Hawaii.

Respectfully submitted,

_____
LAURA DAI
Special Agent, HSI

This Criminal Complaint and Affidavit in support thereof were presented to, approved by, and probable to believe that the defendant above-named committed the charged crime found to exist by the undersigned Judicial Officer on March __24____, 2021, at 4:01 p.m.

Sworn to under oath before me telephonically, and attestation acknowledged pursuant to Fed. R. Crim. P. 4.1(b)(2), on March ___24___, 2021, at Honolulu, Hawaii.



_____
Rom A. Trader
United States Magistrate Judge